**Danny CUPIT & Wife, Betty Cupit, Plaintiffs,**

v.

**Charles WALTS dba Merchants, Inc., Merchants Fast Motor Lines, Inc. & Gypsum Transport, Inc., Defendant.**

**Civ. A. No. 9:94CV226.**

United States District Court, E.D. Texas, Beaumont Division.

May 30, 1995.

---

Douglas E. Lowe, Palestine, TX, Paul Eugene White (Zeleskey Cornelius Hallmark Roper & Hicks), Lufkin, TX, for plaintiffs.

Edmund Burke Huber & Ramon D. Bissmeyer (Foster Heller & Kilgore P.C.), San Antonio, TX, for defendant.

### MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

HEARTFIELD, District Judge.

After consideration of the defendant Gypsum Transport Inc.'s motion for summary judgement and brief in support, the court is of the opinion that the motion should be granted.

#### Background

Danny Cupit is suing his employer, Gypsum Transport, Inc. (Gypsum) for on-the-job injuries allegedly caused by Gypsum's negligence and gross negligence. Betty Cupit, Danny Cupit's wife, is suing Gypsum for loss of consortium. At the time of Mr. Cupit's injury, the employer/employee relationship between Mr. Cupit and Gypsum was governed by a collective bargaining agreement (CBA) entered into between Gypsum and the Union of Transportation Employees (UTE). Article 2, Section 8 of the CBA provides that the exclusive method for settling employee grievances relating to on-the-job injuries is the contractual grievance and arbitration procedure set forth in the CBA. Mr. Cupit did not comply with the grievance and arbitration procedure, however, he did accept benefits provided under the CBA.

#### CBA governs relationship between Mr. Cupit and Gypsum

In March of 1992, the UTE members ratified a program for on-the-job injuries, and incorporated it into the CBA governing the relationship between Gypsum and its employees. UTE, as the exclusive bargaining agent for the drivers and shop employees of Gypsum, possessed the authority to negotiate the CBA comprising the rights of individual Gypsum employees such as Danny Cupit. *See Lozano v. Ingram Manufacturing Company,* 132 LRRM (BNA) 2741, 2743, 1989 WL 251223 (W.D.Tex.1989) *citing NLRB v. Rock-*

*away News Supply Co.,* 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832 (1953). Thus, the CBA in effect at the time of Mr. Cupit's injury determines and defines Mr. Cupit's rights in relation to Gypsum.

*CBA provides Mr. Cupit's exclusive remedy*

■ Article 32, Section 11 of the CBA provides that "the contractual grievance and arbitration procedure set forth herein is the exclusive method for settling any and all disputes ... involving provisions of this Article". The United States Supreme Court has stated that the procedures for settlement of disputes contained in collective-bargaining contracts are among the provisions to be enforced under § 301[1]. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562–63, 96 S.Ct. 1048, 1055–56, 47 L.Ed.2d 231 (1976). Further, the Court stated that "[c]ourts are not to usurp those functions which collective-bargaining contracts have properly 'entrusted to the arbitration tribunal.'" *Id.,* quoting *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 569, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Following Supreme Court authority, this court will enforce the CBA by recognizing the grievance and arbitration procedure detailed therein as the exclusive means for settling disputes involving on-the-job injuries.

*Failure to exhaust exclusive remedy bars suit*

■ If the grievance and arbitration procedure is the exclusive and final remedy for disputes arising under the collective bargaining agreement, an employee may not sue his employer under § 301 until he has exhausted the procedure. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The CBA required Mr. Cupit to file a grievance within a specified period of time. It is undisputed that Mr. Cupit never filed such a grievance. Given that Mr. Cupit did not exhaust his remedies under the CBA, he cannot sue Gypsum in

this court unless an exemption from the CBA's dispute resolution procedure applies.

*Gross negligence*

■ Mr. and Mrs. Cupit contend that claims for gross negligence are exempt from the grievance and arbitration procedure set forth in the CBA. In support of this position, the Cupits rely on Article 32, Section 11 of the CBA, which provides in relevant part:

> [T]he parties agree that the contractual grievance and arbitration procedure set forth herein is the exclusive method for settling any and all disputes *(excluding, but not limited to, those involving gross negligence on the part of the Company, its agents or assigns)* involving the provisions of this Article, .... (emphasis added).

If, however, the CBA is construed as a whole, it is clear that only parties alleging gross negligence *resulting in a fatality* are able to avoid the contractual grievance and arbitration procedure.

*Interpretation of CBA*

The CBA is designed to give Gypsum's employees the same rights and benefits as they would have if Gypsum subscribed to the Texas Workers' Compensation Act. This is expressed in the following sections of Article 32:

> In lieu of subscribing to the Texas Workers' Compensation Act, the Company agrees to provide directly to its employees the compensation and benefits otherwise available under the provisions of the Texas Workers' Compensation Act. (Section 4, Article 32).

> In counseling and determining the benefits and compensation available to employees under this Article, the Company will apply the provisions of the Texas Workers' Compensation Act and the rules of the Texas Workers' Compensation Agency. (Section 5, Article 32).

> Any proceeding concerning an injury or illness sustained in the course of employ-

---

**1.** Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempts Mr. Cupit's state law negligence claims against Gypsum, given that resolution of this dispute is " 'substantially dependent upon analysis of the terms' of the collective bargaining agreement." *Jones v.*

*Roadway Exp., Inc.,* 931 F.2d 1086, 1089 (5th Cir.1991) (citation omitted) citing *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). (emphasis in original).

ment, (e.g., grievance procedure, arbitration, or court), the rights and liabilities of the parties shall be determined by the provisions of the Texas Workers' Compensation Act as if the employee were employed by a subscriber to the Texas Workers' Compensation Act. (Section 8, Article 32).

Furthermore, Article 32, Section 9 of the CBA requires the following:

> Should any provision of this Article conflict with the provisions of the Texas Workers' Compensation Act, including future amendments, the parties agree that the Texas Workers' Compensation Act shall prevail and any conflicting provision(s) of this Article shall be modified to conform with the Texas Workers' Compensation Act....

### Gross negligence claims under the Texas Workers' Compensation Act

The Texas Workers' Compensation Act provides that "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee." TEX.LAB.CODE ANN. § 408.001(a). The Act then goes on to provide, however, that in cases of alleged gross negligence resulting in death of an employee, the exclusive remedies provision of the Act does not preclude the recovery of exemplary damages against the employer. *See id.* § 408.001(b). It follows, that in order for the CBA to conform with the Texas Workers' Compensation Act, employees governed by the CBA should be precluded from seeking remedies other than those provided therein—except where gross negligence *resulting in a fatality* is alleged. Only under these circumstances should the employee be able to seek a remedy in the courts and not be confined to the CBA's exclusive method for settling grievances regarding remedies. In order to achieve this result, Article 8, Section 11 of the CBA must be interpreted to mean that the contractual grievance and arbitration procedure is the exclusive method for settling any and all

disputes "excluding, but not limited to, those involving alleged gross negligence *resulting in fatality....*" This interpretation alleviates the conflict between the CBA and the Texas Workers' Compensation Act, as required by Article 32, Section 9 of the CBA.

### Interpretation of CBA does not render summary judgement inappropriate

The interpretation of the CBA, as with all contracts, is typically a question of law. *United Paperworkers Int'l Union, AFL–CIO, CLC v. Champion Int's Corp.*, 908 F.2d 1252, 1256 (5th Cir.1990). The mere disagreement of the parties upon the meanings of contract terms will not transform the issue of law into an issue of fact. *General Wholesale Beer Co. v. Theodore Hamm Co.*, 567 F.2d 311, 313 (5th Cir.1978). If a written instrument is worded in such a manner that it can be given a definite legal interpretation, then it is not ambiguous, and the contract can be construed by the court as a matter of law. *D.E.W., Inc. v. Local 93, Laborers' International Union of North America*, 957 F.2d 196, 199 (5th Cir.1992). The CBA can be given a definite legal interpretation; thus, it can be construed as a matter of law, making summary judgement appropriate.

### Loss of Consortium & Household services

Mrs. Cupit's claim for loss of consortium is derivative of her husband's claims against Gypsum. *Benavides v. County of Wilson*, 955 F.2d 968, 975 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992) citing *Reagan v. Vaughn*, 804 S.W.2d 463, 467 (Tex.1990), *overruled in part*, 34 Tex.Sup.J. 419 (1991). Given that Danny Cupit's claims relating to his on-the-job injury are barred by the exclusive remedy provision of the CBA, Betty Cupit cannot recover against Gypsum on her derivative claim of loss of consortium. *See Benavides*, 955 F.2d at 975.

### Conclusion

Danny Cupit's negligence and gross negligence claims against Gypsum were waived by UTE when it entered into a collective bargaining agreement with Gypsum that provided the exclusive remedy for compensating employees for on-the-job injuries and resolv-

ing disputes regarding the compensation provided. Because of Mr. Cupit's failure to institute a grievance under the provisions of the CBA, he is now barred from asserting negligence and gross negligence claims against Gypsum. Since Mr. Cupit's claims of negligence and gross negligence against Gypsum are barred, Mrs. Cupit's derivative claim for loss of consortium is also barred.

Accordingly, defendant Gypsum Transport Inc.'s motion for summary judgement is granted.